## Brickajlik Estate

*William H. Eastburn, III,* for objectors.
*Edward J. Hardiman,* for exceptants.
*Donald B. Smith Jr.,* for accountant.

MIMS, *J.*, September 30, 1980—Objections to the schedule of distribution filed in accordance with the adjudication of the third and final account of Bucks County Bank and Trust Company, Administrator, have been filed by Andrew Brickajlik, William Brickajlik, Lena Tiller and Rose Withers, four of the six heirs of decedent.

These objections were originally filed in 1970 at the time of the filing of the first and partial account and again renewed at the time of the second and partial account. Decision on these objections was deferred until the filing of the schedule of distributions directed after the adjudication of the third and final account.

These objections relate to the unequal advance distributions made to certain heirs and a demand for interest to equalize the distributions among all the heirs.

After a petition for a citation to show cause why an evidentiary hearing should not be held, answer and new matter in response thereto, a reply to new matter and memorandum of law, an evidentiary hearing was held on June 16, 1980. Subsequently briefs were filed and the matter is now ready for decision.

The estate has been 12 years in reaching this point and its history can be read in the adjudication of the first account written by the Honorable Edwin H. Satterthwaite, the then President Judge of the Orphans' Court in 1974, affirmed by the Pennsylvania Supreme Court in Estate of Brickajlik, 463 Pa. 131, 344 A. 2d 461 (1975), and in the adjudication of the second and partial account filed by the undersigned judge on January 2, 1979.

The present controversy arises over the unequal distribution to the heirs. These distributions are as follows:

| 7/18/69 | | Credits for respective shares of real estate purchased by some of the heirs as follows: | |
|---|---|---|---|

| | | | |
|---|---|---|---|
| John Brickajlik | 1/6 | interest | $23,167.00 |
| John Brickajlik | 1/6 | interest | 16,833.00 |
| Michael Brickajlik | 1/6 | interest | 23,167.00 |
| Michael Brickajlik | 1/6 | interest | 16,833.00 |
| Andrew Brickajlik | 1/6 | interest | 18,000.00 |
| William Brickajlik | 1/6 | interest | 18,000.00 |
| Rose Withers | 1/6 | interest | 18,000.00 |
| Lena Tiller | 1/6 | interest | 18,000.00 |
| 6/25/76 | | Distribution to Andrew Brickajlik, check to Rose Brickajlik and David S. Winston, attorney, for garnishment and attachment proceedings against Andrew Brickajlik | 5,782.72 |
| 10/28/77 | | Net proceeds from sale of real estate on Constitution Avenue, Perkasie, Pa. paid to: | |
| John Brickajlik | 1/6 | interest | 8,581.91 |
| Michael Brickajlik | 1/6 | interest | 8,581.91 |
| William Brickajlik | 1/6 | interest | 8,581.91 |
| Andrew Brickajlik | 1/6 | interest | 8,581.91 |
| Lena Tiller | 1/6 | interest | 8,581.91 |
| Rose Withers | 1/6 | interest | 8,581.91 |
| Total Distributions | | | $209,274.18 |

The accountant's schedule of distribution proposes to distribute the remaining principal and income in equal shares to the six heirs of decedent after deducting the respective advance distributions so that the final amounts to be awarded to the heirs are:

| | |
|---|---|
| John Brickajlik | $ 9,614.81 |
| Michael Brickajlik | 9,614.81 |
| Andrew Brickajlik | 25,832.09 |
| William Brickajlik | 31,614.81 |
| Rose Withers | 31,614.81 |
| Lena Tiller | 31,614.82 |
| Total | $139,906.15 |

The objectors argue that an adjustment should be made in schedule of distribution to equalize the distributions among the heirs, not only as to the principal amount distributed but also as to the benefit received by the so-called favored heirs from having received substantial partial distributions in excess of their fair share approximately 11 years ago.

The evidence from the hearing and the record shows that the decedent's estate contained various parcels of real estate, which the administrator sold at public auction on November 2, 1968, after negotiations with the attorneys for the respective heirs by the attorney for the administrator. The attorneys for the respective heirs were notified by the attorney for the administrator that if any of the heirs were successful bidders the interest of such heir, should be credited toward the total purchase price which the successful bidder-heir would be obligated to pay. The limit of the credit was fixed at one-sixth of the price for each parcel. The letter from the attorney for the accountant to the attorneys for the heirs (P-1) contained the following paragraph:

"If any of the heirs should be successful and purchase any of the various pieces of real estate, I feel that the interest of such heir in the father's estate should be credited toward the total purchase price which such heir or heirs might be obligated to pay on the bid price, with the understanding that such heir should pay interest at the rate of 6% on the difference between the amount due the estate and the amount of such heir's interest. In view of the objections raised by the titled company mentioned above, I would suggest that such interest shall be computed and begin to run from such time as the

Administrator is in position to give a good and marketable title.''*

John and Michael obtained their financing from another source and the other four heirs obtained a purchase money mortgage for the difference between their credit and the total purchase price.

The attorney for the accountant testified that he had met with the attorneys for the two separate groups of heirs and an expression of the understanding arrived at by the attorneys was summarized in the letter written to both attorneys on October 25, 1968 (P-1), supra, prior to the public auction on November 2, 1968. No objections to this letter were communicated to the accountant's attorney. In fact the understanding was affirmed by a letter from the attorney for the four objectors dated May 6, 1969 (P-3) and again affirmed by a letter dated May 9, 1969 to the new attorney for two of the heirs, John and Michael. (P-2).

John Brickajlik and Michael Brickajlik both testified that they had seen P-1 prior to the auction and had relied upon the paragraph cited above when they bid on the properties which they purchased at the sale.

We are satisfied that the credits allowed on the purchase of real estate were not preferential distributions as argued by the objectors. We also find that there was an agreement among the heirs that the credits should be given to any heirs who were successful bidders at the auction and that the only interest to be charged was on the amount in excess of the bidder's interest.

---

*A petition had been filed by John and Michael Brickajlik which affected the marketability of certain real estate. By a stipulation at a hearing before the Honorable Edwin H. Satterthwaite the parties agreed that the real estate could be sold.

This case can be distinguished from the Estate of Snyder, deceased, No. 49511, which we decided in May, 1980, and upon which the objectors rely. In that case, the executrix had distributed to herself in February of 1976 *cash* in the amount of $11,157.47 which resulted in an advance distribution to her in excess of her share in the estate. We refused therefore to pay her any of the interest remaining for distribution holding that it was a preferential distribution.

The situation here is a very different one. All of the heirs knew of the auction of the real estate and knew that they could use one-sixth of the price of the real estate as a partial payment on account of the total purchase price. In fact all of the heirs did avail themseves of the opportunity and did purchase real estate and received a credit of one-sixth of the purchase price. The inequality of the distribution arose from the difference in the prices paid for the different parcels of real estate.

Objectors have argued that the advances by way of credits on the real estate to John and Michael should be treated as loans and interest charged thereon. In view of the agreement among the heirs which we have found existed, we can find no legal justification for the charging of interest on the credits on the real estate.

In reviewing the record of the distributions we find no indication that the heirs John and Michael sought to derive any particular advantage over the other heirs by receiving a greater share of the credits allowed on the purchase of the real estate at a public auction.

We are satisfied that the reasoning in Austin Estate, 1 Fiduc. Rep. 9 (1950), applies in this case.

Emphasis has been put on the long period of time which has been required to complete the adminis-

tration of this estate. A review of the record shows no fault on the part of the accountant for the delay and reveals that all of the heirs have participated in the factors which caused that delay—which did involve serious questions of law, admittedly.

"There appears to be no express authority in Pennsylvania for the charging of interest on portions of principal distributed in advance of final settlement of the estate" as stated by President Judge, VanRoden, in Austin Estate, supra at page 11. For that reason the factual situation in each estate must be carefully examined and as President Judge Taxis stated in Weaver Estate, 26 Fiduc. Rep. 166, 168 (1976): "It would be inequitable, in the absence of any indication of fraud or serious mistake, to require the repayment of income distributions heretofore made. . . ." It is true that Weaver Estate involved payments of income by a trustee which had been made over a period of fifteen years. However, the application of equitable principles may certainly be applied in the instant case in consideration of the facts of this case.

In Summary we find:

1. that all the heirs agreed to sell the property at public auction;

2. the heirs agreed that one-sixth of the purchase price would be allowed as a credit on the purchase price to all successful heir-bidders and that financing would be provided by the accountant at the rate of six percent on the difference between the one-sixth credit and the bid price;

3. that the credits were offered to and taken advantage of by all the heirs;

4. that the early sale of the real estate was a benefit to the estate and to all the heirs;

5. the credits to John and Michael Brickajlik were not preferential distributions since all of the

heirs had the opportunity to bid on all the real estate parcels at the public auction and agreed to the distribution.

6. the objectors have failed to present any testimony to show any real loss to them caused by the credits given at the time of the sale of the real estate by public auction.

For the foregoing reasons we enter the following

## DECREE

And now, September 30, 1980, the objections filed by William Brickajlik, Andrew Brickajlik, Lena Tiller and Rose Withers to the schedule of distribution filed by Bucks County Bank and Trust Company, Administrator of the Estate of John Brickajlik, deceased, are hereby denied and overruled. The state of distribution is hereby confirmed.